J-A01002-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: INVOL. TERM. OF PARENTAL RIGHTS TO: A.G.H. | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.D.H., MOTHER | : : : : : : : | |
| | : | No. 1150 MDA 2021 |

Appeal from the Decree Entered August 2, 2021
In the Court of Common Pleas of Centre County Orphans' Court at No(s):
2020-4487 A

BEFORE:  LAZARUS, J., NICHOLS, J., and KING, J.

MEMORANDUM BY LAZARUS, J.:           **FILED: MARCH 11, 2022**

K.D.H. (Mother) appeals from the decree, entered in the Court of Common Pleas of Centre County, terminating her parental rights to A.G.H. (Child) (born 9/15) pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b) of the Adoption Act.[1]  After our review, we affirm based on the opinion authored by the Honorable Katherine V. Oliver.

Both Mother and R.L. (Father) were incarcerated when Child was born. Maternal grandparents cared for Child while both parents were incarcerated, and Father was released from incarceration shortly after Child was born. Mother and Father agreed that Father would have custody of Child every weekend, but in spring of 2016, Father filed for and received emergency custody of Child based on his concern that Mother was using drugs and Father

_____

[1] 23 Pa.C.S.A. §§ 2101-2938.

was unable to reach her. Mother did not attend the emergency hearing because she was incarcerated again.[2] On April 19, 2016, Father was awarded sole custody of Child, and Mother was awarded shared legal custody and informed of her right to seek modification of the custody order. At that time, Child was eight months old.

In April 2020, Mother was released from jail; she had been incarcerated for twenty-two months and had not seen Child since April 2016.

In July 2020, when Child was five years old, Father filed a petition to involuntarily terminate Mother's parental rights to Child. Father asserted Child has lived with him and his wife (Stepmother), whom Child refers to as "Mom," and they have met all of child's physical, emotional, financial, medical, and educational needs.

The court held a hearing on June 14, 2021,[3] after which it terminated Mother's parental rights to Child, finding: Father met his burden of proving, by clear and convincing evidence, that Mother failed to perform parental duties for Child for a period of at least six months preceding the filing of Father's petition in July 2020; Child does not know Mother, or have any recollection of her; Child looks to Stepmother as her mother and Stepmother sees Child as

_____

[2] In April 2016, Mother was incarcerated for twenty-two months for driving under the influence (DUI). Mother was released in 2018, but she was incarcerated again in 2019 for approximately seven months in relation to another DUI charge. Mother was ultimately released from jail in April 2020.

[3] The court appointed Justin Miller, Esquire, as counsel for Child. *See In re: Adoption of L.B.M.*, 161 A.3d 172, 180 (Pa. 2017).

her own daughter; a strong bond exists between Father and Child, and between Stepmother and Child; Stepmother would like to proceed with adoption and adoption by Stepmother is in Child's best interests. ***See*** Trial Court Opinion, 8/2/21, at 5-9.

On appeal, Mother argues the court erred in terminating her parental rights pursuant to section 2511(a)(1)[4] "despite Mother's efforts to maintain a parent-child relationship in the face of obstacles placed in her path by Father." Appellant's Brief, at 4. Mother contends Father changed his address twice without notifying her, blocked her from contacting him or his wife on Facebook Messenger, and did not respond to her calls. ***Id.*** at 12-13. Mother claims the court weighed too heavily the fact that she never petitioned to modify custody. ***Id.*** at 13.

In cases involving termination of parental rights, "our standard of review is limited to determining whether the order of the trial court is supported by

_____

[4] Section 2511(a)(1) provides:

> **(a) General rule**.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. § 2511(a)(1).

competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child." *In re Z.P.*, 994 A.2d 1108, 1115 (Pa. Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa. Super. 2009)). "Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." *In re B.L.W.*, 843 A.2d 380, 383 (Pa. Super. 2004) (en banc) (internal citations omitted).

Judge Oliver has comprehensively set forth the reasoning supporting her decree, and we find no error or abuse of discretion.[5] *B.L.W.*, *supra*. Accordingly, we affirm the decree based on Judge Oliver's opinion and instruct the parties to attach a copy of that opinion in the event of further proceedings.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/11/2022

---

[5] With respect to Mother's claim that Father created barriers that impeded her ability to contact Child, the court acknowledged Father's unwillingness to help Mother, but found Mother presented no evidence that she tried to locate Father and that she "did not utilize all resources available to her[.]" Trial Court Opinion, *supra* at 7. In particular, the court found "Mother knew how to go about petitioning the court to establish custody rights, and that she had done so in a *pro se* capacity in the past *vis a vis* her other children." *Id.*

- 4 -

IN THE COURT OF COMMON PLEAS, CENTRE COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

IN RE: INVOLUNTARY TERMINATION :
OF PARENTAL RIGHTS TO ████████ :  No. 4487
████████████, a female minor, :
D.O.B. ████████████ :

COPY

FILED FOR RECORD
CENTRE COUNTY, PA

2021 AUG -2 P 1: 32

CHRISTINE M. MILLINDER
REGISTER OF WILLS &
CLERK OF ORPHANS' COURT

*Attorney for Petitioners:*        *Bobbie L. Rabuck, Esq.*
*Attorney for Biological Mother:*  ✓*Stephanie G. VanHorn, Esq.*
*Attorney for Minor Child:*        *Justin P. Miller, Esq.*

Oliver, J.

## OPINION

Presently before the Court is a petition to terminate parental rights filed by ████ L████ ("Father"), seeking to terminate ████████'s ("Mother") parental rights to five-year-old ████████████. Father's petition was filed on July 13, 2020; an Amended Petition was filed one day later. The Court appointed Justin Miller, Esquire, as counsel for the minor child. The matter was originally scheduled for hearing on November 20, 2020, but was rescheduled on three occasions thereafter. The hearing ultimately took place on June 14, 2021 and the parties were directed to file post-hearing briefs with respect to their respective positions. Briefs have been filed by all parties, and the matter is ripe for disposition.

### A. Factual Background[1]

████████████ (the "Minor Child" or "Child") is five years old. Mother and Father were acquaintances when she was conceived. Both have a history of substance abuse and are in recovery. At the time of the Minor Child's birth in September of 2015, Father was in prison for having violated parole. His original sentence had been for a driving under the influence conviction, and the parole violation involved narcotics use. He served his maximum sentence and was released late in 2015 shortly after the Minor Child was born.

Mother had informed Father of the pregnancy when she became aware of it. Mother spent a good portion of her pregnancy in jail after relapsing in or around February of 2015. The

---

[1] The factual summary is based upon the facts as established at the June 14, 2021 evidentiary hearing.

□ O □ RD ▮ S

Minor child was born while Mother was still in jail; Mother's parents cared for the Minor Child for a time while both parents were incarcerated.

Soon after Father was released from jail in 2015, a paternity test was taken in connection with Mother's claim for child support. Father testified that he began seeing the Minor Child on a regular basis after the test confirmed that he was the Minor Child's Father. By agreement of Mother and Father, Father would take custody on weekends. This pattern continued for a period of several months.

The custodial arrangement changed after a couple of incidents when Mother did not arrive to pick the Minor Child up as scheduled and Father could not reach her. After one such incident on Easter weekend in 2016, Father filed a petition for emergency custody based on a concern that Mother was using drugs and the fact that her whereabouts were unknown. Father's petition was granted and a custody conference was scheduled. Mother failed to appear for the conference, and, by Order dated April 29, 2016, Father was awarded sole physical custody. The Order awarded Mother shared legal custody rights and expressly informed Mother of her right to petition the court for modification of the Order. The Minor Child was approximately eight months old at the time. Mother has not had contact with the Minor Child since entry of the custody Order.

The Minor Child has been in Father's care and custody since the April 29, 2016 Order was entered. Mother testified that she was incarcerated for twenty-two months for DUI charges at around the time Father was awarded custody. She was released in 2018, but then re-incarcerated in 2019 for approximately seven or eight months in relation to DUI charges related to a 2019 arrest. Mother was released from jail for the last time in April of 2020.

The evidence established that Mother sent occasional gifts to the Minor Child while she was in jail during the Child's first years of life. Mother testified that she tried to contact Father many times about being a mother to the Minor Child. She stated that, on learning she had made parole in November of 2017, she began writing letters to Father about reunification with the Minor Child. Father recalled receiving letters from Mother while he was still living in his parents' home, within the first year or two of the Minor Child's life. He received two gifts Mother sent from jail for the Minor Child, but nothing since her release. Father did not respond to the letters from Mother or acknowledge the gifts she sent.

In the early period after Father had received custody of the Minor Child, Father arranged with Mother's parents and extended family to see the Child on occasion. There were very few

2

such visits, and Father did not keep them up because the Minor Child did not really know who they were.

During the roughly five-year period since Father was awarded custody, Father and the Minor Child lived at paternal grandmother's for a time, and then eventually moved into the home of Father's then-paramour, now-wife, J██ L███. Father and Ms. L███ married in August of 2018, and they moved into a new home with the Minor Child within the last year. Each of Father's residences with the Minor Child have been in Centre County.

Father's cell phone number has not changed for many years, and Mother had Father's cell phone number. Text messages from Mother in March of 2019 were introduced. Mother was asking to see the Minor Child. Father's response was angry and made clear his position that he felt it was best for the Minor Child if she did not see Mother. He directed that Mother not contact him again. At the hearing, Father testified he was angry because he felt Mother had chosen drugs over the Minor Child.

Mother reached out to Father again by text message about a year later, in May and in June of 2020. Father did not respond.

Mother had also reached out to Ms. L███ in early March of 2018 via Facebook messenger asking to see the Minor Child. Ms. L███ did not respond. Father was angry about the nature of the message, and blocked Mother and her family from further contact through this medium. At no time did Father block Mother from contacting him on his cell phone.

There was substantial testimony demonstrating the significant life changes made by Mother over the past few years. Mother has been narcotics-free for five years, and alcohol-free since the 2019 DUI charges. She is a healthy, productive member of society. She is gainfully employed, actively involved in a church community and the re-entry community, and she has established custody rights with respect to her three other children. Mother testified she never stopped wanting to see the Minor Child and feels that Father prevented her from being part of the Child's life.

Mother has three other children and, in July of 2015, she filed custody petitions in the Centre County Court of Common Pleas to obtain custodial rights with respect to those children. She was unrepresented and filed the petitions without the assistance of a lawyer. At that time, she had been incarcerated at SCI Muncy and was seeking to establish phone, mail and email contact with the children, who were then ages 7, 4 and 2. Mother contended that it was different with the Minor Child because she was so young, and it would not have made sense to file a

3

custody action for these kinds of communications. Mother also testified that she was waiting to file with respect to the Minor Child because she wanted to be sure she could maintain sobriety and demonstrate to the court that she had changed her life. Mother testified that she came to the courthouse to file custody paperwork with respect to the Minor Child in 2018 but she did not have the money she needed for filing.[2]

Father and Ms. L████ have raised the Minor Child along with their two other children, ages 4 and 2. Ms. L████ also has two children from another marriage (ages 16 and 12) who reside with the family during Ms. L████ custodial periods. The evidence established that Ms. L████ has acted as a mother figure in the Minor Child's life beginning sometime in 2017, even before Father and Ms. L████ moved in together. Father and Ms. L████ both testified they have explained as best they can to a five-year-old that Ms. L████ is not the Child's birth mother, but that she loves the Minor Child just as she does all the other children. The evidence established that the Minor Child looks to Ms. L████ as "mommy," and calls her "mom." Ms. L████ sees the Minor Child as her own daughter. The evidence established that a strong bond exists between the Minor Child and Father, and between the Minor Child and Ms. L████. Father and Ms. L████ would like to proceed with having Ms. L████ adopt the Minor Child and believe this would be in her best interest. They both testified to their belief that attempting reunification with Mother at this time, after so many years of Mother's complete absence from her life, would be detrimental to the Child's well-being.

The Minor Child does not know Mother or have any relationship with her. There was no indication that she has any recollection of her, let alone a bond with her.

### B. Discussion

Section 2511 of the Adoption Act, 23 Pa. C.S.A. § 2501, *et seq.*, sets forth the governing provisions with respect to termination of parental rights proceedings. Section 2511 requires the court to engage in a bifurcated decision-making process. *See In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010); *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007). First, the Court must determine whether any of the grounds for involuntary termination under section 2511(a) have been established. The party petitioning for termination must prove that the subject parent's conduct meets at least one of the statutory grounds for termination as set forth in section 2511(a).

---

[2] Mother referenced not having "the $3,000.00" she would need. She did not explain why she would need this sum in relation to filing a custody action.

4

If the court concludes that the petitioning party's burden under section 2511(a) has been met, the court must turn to the second part of the analysis in accordance with section 2511(b). *Id.*; *In re Adoption of K.J.*, 936 A.2d 1128, 1134 (Pa. Super. 2007), *appeal denied*, 951 A.2d 1165 (Pa. 2008); *In re L.M.*, 923 A.2d at 511. Under section 2511(b), the court must make a determination of the needs and welfare of the child using the best interest of the child standard. *Id.*

The petitioning party bears the burden of proof in termination of parental rights proceedings, and that burden must be met by clear and convincing evidence. *In re Adoption of K.J.*, 936 A.2d at 1131. The clear and convincing evidence standard requires evidence "so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *Id.*

### 1. 2511(a) Analysis

In the case at bar, Mother asserts section 2511(a)(1) as grounds for termination under the first step of the section 2511 analysis. That section provides as follows:

23 Pa.C.S. § 2511. **Grounds for involuntary termination**

> (a)    General Rule. - - The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S. § 2511(a)(1). Section 2511(a)(1) is satisfied by showing either a parent's settled purpose to relinquish a parental claim or a dereliction in performing parental duties. *In re Burns*, 379 A.2d 535, 623-24 (Pa. 1977).

With respect to "parental duties," the Pennsylvania Supreme Court has stated:

> (b)    Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. . . . This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child. . . . [P]arental duty requires that a parent "exert himself to take and maintain a place of importance in the child's life."

5

*In re Burns*, 379 A.2d 535, 540 (Pa. 1977).

A parent has an affirmative duty to engage in "a sincere and genuine effort to maintain a parent-child relationship." *In re Shives*, 525 A.2d 801, 803 (Pa. Super. 1987). The law requires that a parent "use all available resources to preserve the parent-child relationship and . . . exercise 'reasonable firmness' in resisting obstacles placed in the path of maintaining the parent-child relationship." *Id.* In cases where a custodial parent has created obstacles or barriers in an effort to impede access to the child by the non-custodial parent, a court must consider the non-custodial parent's explanation for her actions or inactions. *Id.* The inquiry to be made is whether, in light of all of the circumstances, the parent has utilized all available resources to preserve the parent-child relationship. *Id.* Parents have an affirmative duty to take action to maintain the parent-child relationship even in difficult circumstances. *Id.*

On consideration of the evidence, the Court determines that Father has met his burden of proving, by clear and convincing evidence, that Mother failed to perform parental duties for the Minor Child by her conduct continuing for a period of at least six months immediately preceding the filing of Father's termination petition in July of 2020. In making this determination, the Court is mindful that courts should not apply the six month period of section 2511(a)(1) mechanically; rather, the entire history of the case must be taken into consideration. *See In re Adoption of M.M.M.*, 248 A.3d 484, 2021 WL 129363, *9 (Pa. Super. 2021)(non-precedential decision). As an initial point, Father's role as the sole physical custodian of the Minor Child began with the filing of an emergency custody petition and Mother failing to appear for the court conference scheduled to address that filing. In the Order awarding Father sole physical custody, Mother was awarded legal custodial rights and was expressly informed of her right to petition the court for modification. That was more than four years ago, and Mother has not had *any contact* with the Minor Child beyond sending a gift or two from jail when the Minor Child was very young.

The Court observes that Mother's efforts to be part of the Child's life were sporadic and extremely sparse. The Court is aware that Mother was incarcerated for a good portion of the Child's life, and that she struggled due to a substance abuse disorder. The evidence showed, however, that there were substantial periods when Mother was not incarcerated and was in recovery, yet she took no affirmative steps to be engaged with the Child and to be a part of her life.

6

Mother contends she never stopped wanting to be part of the minor Child's life, and that Father created barriers that impeded her ability to have any contact with the Minor Child. In that regard, Mother points to the fact that Father changed residences a couple of times without providing her with his new address, that he failed to respond to letters she sent him from jail, that he blocked her on Facebook messenger, responded with hostility to a text she sent inquiring about being part of the Minor Child's life, and ultimately stopped responding to her texts and did not answer her calls.

Although Father did move residence addresses twice without informing Mother, all of Father's residences have been in Centre County, and there was no evidence presented that Mother had ever even tried to locate him. In fact, Mother testified she was not aware Father had moved until he filed the petition to terminate parental rights in July of 2020. Mother also knew where Father's mother lived. Moreover, over all these years, Father has had the same telephone number and Mother was able to reach him at that number via text message in 2019 and then again in 2020. She was also able to reach Ms. L████ via Facebook messenger in 2018 before Father "blocked" her after having been upset by a message Mother sent to Ms. L████.

The Court further observes that the record is clear that, as of the time Mother reached out to Father in March of 2019, Father was not supportive of Mother having any relationship with the Minor Child and he made this very clear to Mother. Mother should have known as of that time, if she had not realized it before, that she would need to take affirmative steps to assert her right to see the Minor Child. The evidence demonstrated that Mother knew how to go about petitioning the court to establish custody rights, and that she had done so in a *pro se* capacity in the past *vis a vis* her other children. Despite knowing that Father would not willingly allow her to see the Child, and despite knowing how to go about enforcing her parental rights, Mother allowed years to lapse without having any contact whatsoever with the Child. While the Court accepts as genuine Mother's testimony that she never stopped wanting to be a mother to the Minor Child, the law is clear that a passive interest is not enough. The Court does not find the couple of text messages sent by Mother in the Spring of 2020 sufficient to meet her affirmative duty to "exert [herself] to take and maintain" a parent-child relationship with the Minor Child. The record is clear that Mother did not utilize all resources available to her to do so despite any difficulties imposed by Father's refusal to willingly assist her.

In sum, the evidence demonstrates that Mother failed to perform parental duties for the child during the six month period immediately preceding Father's petition, and the Court

7

concludes that Mother has not offered an acceptable explanation for that failure. Accordingly, Father has met his burden under section 2511(a)(1).

## 2. 2511(b) Analysis

Section 2511(b) requires the court to make a determination of the needs and welfare of the child using the best interest of the child standard. *Id.* In the best interest assessment, courts must consider whether a natural parental bond exists between the parent and child, and whether termination of parental rights would destroy an existing, necessary and beneficial relationship. *In re Adoption of K.J.,* 936 A.2d at 1134. The needs and welfare of the child are paramount. *See id.* In that regard, the court must consider both intangible and tangible factors, as well as continuity of relationships. *Id.*

Father seeks to terminate Mother's parental rights in order to free the Minor Child for adoption by Ms. L████. Ms. L████ has acted as a mother to the Minor Child since the Child was less than one year of age, and she views the Child as her own daughter in every respect and treats her that way as well. The evidence established that the Minor Child has a strong, healthy bond with both Father and Ms. L████, and she perceives Ms. L████ as her mother and refers to her as "mom" after seeing the other children at daycare refer to the mother figures in their lives this way. The Minor Child understands she has a different last name than the rest of the family; this is a point of confusion for her. The Minor Child has a healthy relationship and bond with the other children in the household, and also with Ms. L████'s extended family. Father and Ms. L████ desire to formalize through the adoption process that which they feel is already true -- that they are a family in every respect.

There was no evidence of any existing bond between Mother and the Minor Child, which is not surprising given that Mother last had any contact with the Minor Child when the Child was less than one year of age and the Child is now five. Father testified that the Minor Child would not even recognize Mother and does not know who she is. Although Father and Ms. L████ have tried to explain to the Minor Child that she is not Ms. L████ biological child the way the other children in the household are,[3] they have not talked to her about Mother because they feel it would be difficult for her to understand because she does not know her. They are concerned that introducing Mother into the Child's life after all these years would disrupt her sense of stability

---

[3] They have explained that she was never in Ms. L████ "belly" the way the other children were, but that Ms. L████ loves her just as she does all the other children.

8

and security. The Court observes that the Minor Child's legal counsel also supports Father's termination petition so that the Child will be free for adoption.

Assessing the evidence overall, the Court concludes that terminating Mother's parental rights would not destroy any existing beneficial relationship between Mother and the Minor Child. Although the Court acknowledges the personal challenges Mother has faced, and the great strides she has made in terms of making a better life for herself and her other children, the fact of the matter is that Mother was completely absent from the Minor Child's life for more than four years before Father filed his termination petition. Pennsylvania appellate courts have consistently held that "a child's life 'simply cannot be put on hold in the hope that . . . [a parent] will summon the ability to handle the responsibilities of parenting.'" *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008). The Child is now nearly six and she has not had any contact with Mother since infancy. In the intervening years, the Child has grown and developed, and she has formed strong bonds with the family that has raised her and cared for her. She is healthy and well-adjusted, and termination of Mother's parental rights will free her for adoption by the only mother she has ever known. In sum, the Court finds the evidence in this case demonstrated that terminating Mother's parental rights would best meet the needs and welfare of the Minor Child, such that the requirements of section 2511(b) are met.

## ORDER

AND NOW, this 30th day of July, 2021, consistent with the foregoing Opinion, Father's Amended Petition for Involuntary Termination of Parental Rights of Biological Mother is hereby GRANTED, and all parental rights of ████████ with respect to ██████████ are hereby forever terminated. ████████ has thirty days to file an appeal from this Order to the Pennsylvania Superior Court.

BY THE COURT:

_____
Katherine V. Oliver, Judge

Certified from the records this *3rd* day of *August* 2021

*Christine M. Millinder*
Christine M. Millinder, C.O.O.C.
Division of Common Pleas Court of
Centre County, PA